UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

UNITED STATES OF AMERICA,

        -against-

                                          12 Cr. 897 (AKH)

JOSHUA HICKS

                 Defendant.
-------------------------------------------------------------- X


DEFENDANT JOSHUA HICKS' SENTENCING SUBMISSION



Federal Defenders of New York
Attorney for Defendant
**JOSHUA HICKS**
52 Duane Street - 10th Floor
New York, New York  10007
Tel.: (212) 417-8750

**Jonathan Marvinny**

Of Counsel


TO:   PREET BHARARA, ESQ.
       United States Attorney
       Southern District Of New York
       One St. Andrew's Plaza
       New York, New York  10007
       **Attn: Serrin Turner, Esq.**
           Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

May 10, 2013

**By ECF**

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1050
New York, New York 10007

> **Re:   United States v. Joshua Hicks**
> **12 Cr. 897 (AKH)**

Dear Judge Hellerstein,

I write on behalf of Joshua Hicks in advance of sentencing, which is currently scheduled for May 24, 2013, at 11:00 a.m. Mr. Hicks pled guilty to one count of possession of fifteen unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) and (2). With a Guidelines range of zero to six months, I respectfully urge the Court to sentence him to time served.

## Introduction

Josh Hicks is a bright, extroverted, and compassionate twenty-year old who, until this case, had never been arrested for, much less convicted of, any crime. His arrest was a wake-up call, and he has made great strides while on pretrial release, including landing a job, earning his GED, and enrolling in college. Without minimizing the seriousness of his offense – Mr. Hicks offered fifteen stolen credit card "dumps" (account data) to an undercover FBI agent in exchange for a digital camera and $250 in cash – his conduct was more the result of foolish teenage materialism than an indication of deep-seated criminal intent.

For the reasons discussed in this letter, the Court should conclude that further supervision is not necessary, and should impose a sentence of time

Honorable Alvin K. Hellerstein                          May 10, 2013
United States District Court                            Page 2 of 5
Southern District of New York

Re:   United States v. Mr. Joshua Hicks
      12 Cr. 897 (AKH)

served. Simply put, the horrible consequences of having this felony conviction
on his record for the rest of his life is sufficient punishment for Mr. Hicks'
crimes.

## Background

Mr. Hicks was born in New York City, but spent his early years in a
middle class home in Orangeburg, New York. Though his mother, Denise
Hicks, struggled with a drug addiction that eventually caused the breakup of
her relationship with Mr. Hicks' father, Mr. Hicks, thanks in part to his
devoted grandparents, had a relatively carefree childhood. In 2000, when Mr.
Hicks was eight, Denise finally took control of her addiction and successfully
completed a six-month drug treatment program at Addicts Rehabilitation
Center (ARC) in New York City. After completing her treatment, Denise
stayed at ARC, having landed a job there as a secretary.  She saved up her
earnings and moved her and Mr. Hicks into their own apartment in New
York City. See Letter from Denise Hicks (Ex. A).

Mr. Hicks quickly acclimated to his new life in New York City. He
played on a Little League team and went on after-school trips to the museum
and zoo. He learned how to play the piano and was an active member, along
with his mother, in the gospel choir at ARC. Singing in the choir, Mr. Hicks
was able to travel to Japan and Spain, and even got to narrate a
documentary film about the choir.

Mr. Hicks attended the Murry Bergtraum High School for Business
Careers where he participated on the track and field team and was a member
of the drama club. Once again employing his singing talents, he played a lead
role in the school's production of "Guys and Dolls." However, Mr. Hicks, who
is obviously highly intelligent, found that most of his classes didn't challenge
him sufficiently. As a result, he soon became more interested in hanging out
with his friends than doing his school work. He also started staying up late at
night chatting with friends on AIM and Facebook and developing an active
online social life, and began to lose focus at school. Eventually, he dropped
out.

Honorable Alvin K. Hellerstein          May 10, 2013
United States District Court             Page 3 of 5
Southern District of New York

Re:    <u>United States v. Mr. Joshua Hicks</u>
       12 Cr. 897 (AKH)

**The offense conduct**

Like many teenagers, Mr. Hicks spent a good deal of time on his computer maintaining an active online social life. Eventually, boredom and curiosity led him towards relatively unsophisticated "hacking" activities. Mr. Hicks was truly a dilettante in the hacking world – he did not (and does not) know how to write computer code or how to perform any sophisticated hacking activity. He simply downloaded readily-available programs he found online that could test the security of various websites with databases of credit card information.

Toward the end of 2011, with his family struggling financially, Mr. Hicks made the foolish and immature decision to try to obtain cash and some electronic goods in exchange for fifteen stolen credit card "dumps." In the carding forum in which he had registered a year earlier, Mr. Hicks, who had a budding interest in photography, posted: "I'm planning on getting a [camera] from Walmart or something," and wondered whether having that camera shipped to a friend's house would "put [that friend] in danger." Mr. Hicks arranged, with a person who turned out to be an undercover FBI agent, to sell five "dumps" for a digital camera and the remaining ten "dumps" for $25 each, for a total of $250. He received no other financial or material benefit from his unlawful conduct.

When agents later entered Mr. Hicks' apartment to execute a search warrant and arrest him, Mr. Hicks was frightened – he had never had any kind of scrape with the law before, let alone one so serious. He immediately cooperated fully with law enforcement, giving a lengthy and detailed statement about his "hacking" activities and guiding the agents through the relevant files on his computer. Mr. Hicks did not attempt to obfuscate or stonewall the agents; he immediately divulged everything he knew. Entirely unsophisticated in the nature of criminal investigations, Mr. Hicks made a full confession not with the hope of currying favor for himself, but because it was his immediate instinct that he had done something wrong and that he should admit to what he had done.

Honorable Alvin K. Hellerstein                    May 10, 2013
United States District Court                      Page 4 of 5
Southern District of New York

Re:    United States v. Mr. Joshua Hicks
       12 Cr. 897 (AKH)

**After his arrest, Mr. Hicks worked hard to straighten out his life**

      Mr. Hicks' arrest in this case was a wake-up call. He realized that his nights of hanging around with friends and getting into trouble on the internet were leading him nowhere good. He decided to make a change, and he has followed through with his plans.

      Since the inception of this case in June 2012, Mr. Hicks has landed a job as a barista at the Aroma Espresso Bar in Manhattan, PSR ¶ 68, earned his GED, PSR ¶ 66, and, most significantly, enrolled full-time in college. He is currently completing his first semester at the New York City College of Technology in Brooklyn. PSR ¶ 67.[1] Mr. Hicks is thrilled to be working and attending school. His ultimate goal is to land a stable job in the technology industry.

**Given the impressive strides Mr. Hicks has taken since his arrest, the Court need not impose any further supervision**

      Mr. Hicks' significant achievements while on pretrial release during this case show that he does not require further supervision. He has done all that has been asked of him and much more. As he continues to transition into adulthood, it is safe to say that his criminal misconduct is forever behind him.

      Indeed, without excusing Mr. Hicks' conduct, the fact that he was squarely in adolescence when his criminal activity began both mitigates his moral culpability and provides reason to believe that he is unlikely to repeat his offenses as he enters adulthood. As the Supreme Court has recognized, "A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young." Roper v. Simmons, 543 U.S. 551, 569 (2005), quoting Johnson v. Texas, 509 U.S. 350, 367 (1993).

---

[1] At the time of this submission, I have received only the first disclosure of the PSR, dated March 13, 2013. All citations are to that document.

Honorable Alvin K. Hellerstein                        May 10, 2013
United States District Court                          Page 5 of 5
Southern District of New York

Re:     United States v. Mr. Joshua Hicks
        12 Cr. 897 (AKH)

        Numerous scientific studies make clear that most teenagers with Mr.
Hicks' problems of impulsivity and emotional immaturity who engage in
criminal conduct are able to cease their destructive patterns of behavior upon
achieving adulthood. "For most teens, [risky or antisocial] behaviors are
fleeting; they cease with maturity as individual identity becomes settled.
Only a relatively small proportion of adolescents who experiment in risky or
illegal activities develop entrenched patterns of problem behavior that persist
into adulthood." Simmons, 543 U.S. at 570, quoting Steinberg & Scott, Less
Guilty by Reason of Adolescence: Developmental Immaturity, Diminished
Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009,
1014 (2003). The Court can rest assured that Mr. Hicks has no interest in
returning to the behavior that has caused him so much pain and anguish.

                                * * *

        Based on Mr. Hicks' capacity for reflection and his appreciation for the
real-world consequences of his behavior, it is safe to say that Mr. Hicks'
youthful misdeeds are forever behind him. Accordingly, a felony conviction,
with its attendant life-long negative impact, is more than sufficient to punish
him. The Court need not impose any period of supervised release, and should
instead sentence him to time served.

                                        Respectfully submitted,


                                        /s/ Jonathan Marvinny
                                        Jonathan Marvinny
                                        Assistant Federal Defender


cc:     AUSA Serrin Turner (by ECF)